# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

In re: George R. Carter,  )
Attorney at Law, Bar No. 169  )
 )          Case No.: 2:17-cv-1776-GMN
 )
 )              **ORDER**
 )
 )
 )
 )
_____ )

     Presently before the Court is George R. Carter's ("Carter's") Response to his Order to Show Cause, (ECF No. 3), regarding reciprocal discipline in this Court.  The Nevada Supreme Court issued a four-year suspension on May 18, 2017, and the Court issued its Order to Show Cause on June 22, 2017, (ECF No. 1).  Based on Carter's inability to meet his burden of proving his alleged violations by clear and convincing evidence, this Court finds that reciprocal discipline is appropriate.

## I.  BACKGROUND

     The Supreme Court of Nevada approved a Conditional Guilty Plea Agreement signed by George R. Carter ("Carter"), bar number 169, and issued his suspension from the practice of law for four years. (Order of Suspension, Ex. 1 to OSC at 1–3, ECF No. 1).  Specifically, Carter pled guilty in the Conditional Guilty Plea Agreement ("CGP") to three counts of instances: (1) Ivo Hurvitz; (2) Kita Hurvitz; and (3) Dr. Steven Holper. (*See generally* CGP).  Carter signed the CGP on January 15, 2016, and the Supreme Court approved the CGP and entered the Order of Suspension on May18, 2017.

     The crux of Carter's suspension is his failure to effectively manage his paralegal Ron Brown ("Brown"). (*See, e.g.*, Findings of Fact and Conclusions of Law ¶ 5).  Specifically,

Carter allowed Brown to have access to multiple clients' funds that were held in trust, and Brown often negotiated on behalf of Carter's clients. (*Id.*). Not only was Brown a non-lawyer, but also Brown is a convicted felon[1] who has had other disciplinary matters with different Las Vegas attorneys. (CGP ¶ 14). Essentially, Carter was found to have given up "basically total control" of his trust account and client funds to Brown. (Ex. 3, 7:23–24, ECF No. 7).

The sections that Carter violated for each count are: RPC 1.15 for Safekeeping Property; RPC 5.4 for Professional Independence of a Lawyer; and RPC 5.5 for Unauthorized Practice of Law. The CPG identified three counts for which Carter was found guilty: (1) Ivo Hurvitz; (2) Kita Hurvitz; and (3) Dr. Stephen Holper.

### A. Count I: Ivo Hurvitz

Pursuant to the CGP, Ivo Hurvitz ("Ivo") hired Carter in May 2011 to represent him with two personal injury matters involving two separate car accidents occurring in 2009 and 2011. (CGP ¶ 1). The first case settled in August 2011 and was broken down into four distinct settlements. (*Id.* ¶ 3–6). Ultimately, Carter collected a total of $84,777.59 from the settlements, keeping $18,493.52 for himself, paying $6,450.62 in medical bills, and sending $32,548.51 to Brown to pay medical liens. (*Id.*¶ 7). Ivo received $28,333.94. (Id.). A similar situation occurred with Ivo's second accident's settlement; however, during Carter's representation of Ivo for this second accident, Ivo ultimately terminated Carter. (*Id.* ¶¶ 9–10).

Carter alleges that Ivo retained him with the understanding that Brown had primary decision-making of Ivo's personal injury claims, including negotiation and payment of all medical liens. (*Id.* ¶ 13). There is no evidence that Brown paid the medical liens or even if he negotiated them as Carter deferred to him to do. Because of this, Carter is in violation for failing to safeguard his client's funds in allowing Brown to have access to these funds, for

---

[1] Carter and the State Bar were unsure at the hearing of what Brown's felony conviction was for, with the State Bar alleging that they believed it was an IRS tax fraud conviction, and Carter stating that he thought it had to do with Brown's brother "or something was involved in a robbery." (Ex. 2, 41:6–10).

engaging in a business relationship with Brown in allowing Brown to negotiate on behalf of clients, and for assisting Brown in the unauthorized practice of law.  (CGP ¶ 16).

### B.  Count II: Kita Hurvitz

Kita Hurvitz ("Kita"), Ivo's mother, hired Carter to represent her for her "bodily injury claim" and had a settlement broken down into four parts, one of which came from a nonbinding arbitration award of over $100,000. (CGP ¶¶ 17–20).  After the offsets were deducted from the arbitration award, the remaining amount was $89,167.30. (Id. ¶ 30).  Kita negotiated with Brown and Carter that after the liens were paid off, she would receive $40,000, and Kita began to receive checks with payments from Carter to contribute to this amount, but eventually the checks stopped. (*Id.* ¶ 21).  Similar to Ivo, there is no evidence that Brown ever paid the liens, and Carter was found in violation of the identical conduct. (*Id.* ¶ 25–26).

### C.  Count III: Dr. Stephen Holper

In August 2014, Dr. Stephen Holper ("Holper") contacted the State Bar reporting unpaid medical liens from Carter's office. (CGP ¶ 27).  These unpaid medical liens are from approximately 35 different cases, including the Hurvitzes, and amount to approximately $71,164. (*Id.* ¶ 27–28).  Carter had this business relationship with Holper because Brown had "handled all referrals to Dr. Holper's officer, and [had] negotiated with Dr. Holper over the last 10-15 years regarding case settlements and lien reductions." (*Id.* ¶ 31).

At Carter's hearing discussing the CGP, counsel for the State Bar ("Dworin") stated that Carter admitted that Brown "was handling all of these personal injury matters, including the Hurvitzes and also he had this relationship with Dr. Stephen Holper." (Ex. 2, 8:3–7, ECF No. 6).  Dworin continued that "[e]ssentially what would happen is, is that individuals would sign up with Mr. Carter.  Mr. Carter would take their money, and he would refer the money over to Ron Brown.  And Ron Brown would negotiate the medical lien payments and other things."

(*Id.* 8:8–12).  Similar to the Hurvitzes, Brown never made paid these liens with the money set aside for them, and Carter was found in violation of the same conduct.

The State Bar filed Carter's Complaint on August 13, 2015, and Carter filed his CGP on January 15, 2016. (*See* Index to Ex. 1 at 6, ECF No. 5).  Additionally, the State Bar held its hearing discussing the CGP on January 15, 2016. (*Id.*).  At the end of the hearing, the Bar instituted the additional condition that Carter could not manage a trust account for two years after reinstatement; the Bar accepted his four-year suspension, but stated that if Carter cannot pay his restitution back in full, there is no right to file for a petition for reinstatement. (Ex. 3, 6:12–17).  The Nevada Supreme Court reviewed the Panel's decision and adopted the CGP, suspending Carter for four years on May 18, 2017. (Order of Suspension, Ex. 1 to OSC, at 7).

Accordingly, Carter's stated form of discipline includes the following: (1) a four-year suspension; (2) restitution of $46,548.51 on behalf of Ivo, restitution of $89,167 on behalf of Kita, and restitution of $71,164 on behalf of Holper; (3) pay the costs of the disciplinary proceedings; and (4) pursuant to the hearing, Carter is not allowed to have a trust account or practice in an area of law that would require a client's trust account for an additional two years after reinstatement. (*Id.* at 59); (Ex. 3, 6:5–9; 13:9–12, ECF No. 7).

## II.   <u>LEGAL STANDARD</u>

A federal court imposes reciprocal discipline on a member of its bar when it determines that the state's disciplinary adjudication was proper. *In re Kramer*, 282 F.3d 721, 724 (9th Cir. 2002).  However, the Court will not apply reciprocal discipline if, based on an independent review of the record, the previous adjudication reveals: (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) a grave injustice that would result from the imposition of such discipline.  *Id.* (citing *Selling v. Radford*, 243 U.S. 46, 50–51 (1917)).  The respondent-attorney bears the burden in demonstrating, by clear and convincing evidence, that the Court

should preclude discipline due to one of these infringements.  *Id.*; *see In re Calvo*, 88 F.3d 962, 967 (11th Cir. 1996).

Moreover, in reviewing reciprocal discipline, the Court does not "re-try an attorney for misconduct," but instead inquires "only whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an attorney's adjudicated misconduct that reciprocal [discipline] would result in grave injustice." *Id.* at 727. Federal district courts review a state court's decision and disciplinary proceeding "if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court." *In re Kramer*, 193 F.3d 1131, 1133 (9th Cir. 1999).

Consequently, Local Rule IA 11-7(e)(3) sets out this standard by requiring an attorney to provide facts showing one or more of the following by clear and convincing evidence:

> A. the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
> B. there was such an infirmity of proof establishing the misconduct as to give rise to a clear conviction that the court should not accept as final the other jurisdiction's conclusion(s) on that subject;
> C. imposition of like discipline would result in a grave injustice; or
> D. other substantial reasons justify not accepting the other jurisdiction's conclusion(s).

L.R. IA 11-7(e)(3).  Accordingly, the attorney must prove that his state disciplinary adjudication suffered from at least one of these infringements in order to bar his reciprocal discipline in Federal Court.

**III.   DISCUSSION**

Carter does not contest the validity of the State Bar proceedings, nor does he allege a deprivation of due process, insufficient proof of misconduct, or a grave injustice having occurred.  Instead, Carter only wishes that the discipline imposed here be lesser than what he received from the State Bar so as to allow him to continue to practice. (*See generally* Resp.).

Accordingly, because Carter does not provide a legal basis to contest his discipline, the Court finds Carter should receive reciprocal discipline.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that George R. Carter, Nevada State Bar #169, is immediately **SUSPENDED** from federal practice in the United States District Court for the District of Nevada[2] and may not reapply to practice in federal court until after he is readmitted to the Nevada State Bar and remains in good standing.  Any subsequent federal practice application must clearly reference this Order of reciprocal suspension.

**DATED** this __4__ day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[2] The suspension from federal practice in the United States District Court for the District of Nevada includes practice in the United States Bankruptcy Court for the District of Nevada.